**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

FILED

03 JUN 26  AM 8: 54

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **LESLIE E. NEAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-02-S-1374-S** |
| | ) | |
| **WAL-MART STORES, INC.,** | ) | |
| | ) | **ENTERED** |
| **Defendant.** | ) | **JUN 2 6 2003** |

## MEMORANDUM OPINION

Plaintiff, Leslie E. Neal, claims that her former employer, defendant Wal-Mart Stores, Inc., violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d), by paying higher salaries to male co-workers performing work requiring equal skill, effort, and responsibility. The action presently is before the court on two motions, both filed by defendant: *i.e.*, motion for summary judgment (doc. no. 28); and motion to strike portions of plaintiff's evidentiary submissions in opposition to summary judgment (doc. no. 39).

Initially, the court observes that plaintiff effectively abandoned the class claims asserted in her amended complaint (doc. no. 9). Her brief opposing summary judgment contains cryptic statements that she "has not sought certification of the Class pending further discovery,"[1] and that "the issue may be moot."[2] It is clear, however, that plaintiff failed to provide any argument regarding the viability of her class claims. Accordingly, that claim is deemed abandoned. *See, e.g., Chapman v. AI Transport* 229 F.3d 1012, 1027 (11th Cir. 2000) (en banc) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting

---

[1] Discovery was closed on March 31, 2003, by the Scheduling Order entered on September 9, 2002 (doc. no. 8).

[2] Plaintiff's brief opposing summary judgment, at 19.

their evidence before summary judgment is granted, not afterwards."); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)).

> In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986). There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990). Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. . . .

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (some citations omitted).[3] Summary judgment will be entered in favor of defendant on plaintiff's class claims. As a consequence, only plaintiff's individual Equal Pay Act claim remains for adjudication.

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after

---

[3] *Cf., e.g., Lucas v. W.W. Grainger, Inc.* 257 F.3d 1249, 1255 n.1 (11th Cir. 2001) ("Lucas has abandoned his unlawful harassment claim by not raising it in his initial brief on appeal.") (citing *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1317 n.17 (11th Cir. 1999) ("Issues that are not clearly outlined in an appellant's initial brief are deemed abandoned.") (citations omitted)); *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995) ("We note that issues that clearly are not designated in the initial brief ordinarily are considered abandoned.") (quotation marks and citation omitted); *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned.") (citing *Allstate Insurance Co. v. Swann*, 27 F.3d 1539, 1542 (11th Cir. 1994)); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (declining to addressed issue for failure of party to argue it in its brief on appeal).

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Upon consideration of the pleadings, evidentiary submissions, and briefs, the court concludes that defendant's motion for summary judgment is due to be granted. Defendant's motion to strike will be denied as moot.

## I. SUMMARY OF FACTS

### A.   Plaintiff's Job Position, Duties, and Pay

Plaintiff was hired by defendant during April of 2001, to work as a manager of the lingerie department in the Wal-Mart SuperCenter located in Calera, Alabama.[4]  The position required plaintiff to price merchandise, train and supervise subordinate employees, assist customers, and

---

[4] Defendant's evidentiary submissions, Exhibit A (Neal deposition), at 10-12.

ensure that merchandise was neatly displayed.[6]  Plaintiff's beginning wage was $7.50 an hour.[7]

Around July 22, 2001, plaintiff requested (and received) a transfer to the store's Tire Lube

Express department ("TLE").[8]  Plaintiff requested the transfer for two reasons:  she wanted to learn

about automobiles; and, several friends were assigned to the TLE department.[9]  Plaintiff did not have

any previous knowledge of, or experience in, automotive maintenance or mechanics.[10]  Upon her

transfer, plaintiff's job title was changed to "service writer/greeter,"[11] a non-supervisory position.

Despite the apparent demotion, plaintiff retained her $7.50 an hour wage scale.  In fact, less than a

---

[6] *Id.* at 12.

[7] *Id.*

[8] Complaint ¶ 9.

[9] Defendant's evidentiary submissions, Exhibit A (Neal deposition), at 14-16.

[10] *Id.* at 15.  At deposition, plaintiff was asked "[p]rior to [the transfer to the TLE department], have you had any knowledge in auto mechanics?"  She responded "No."  *Id.*  Despite her clear answer to that unambiguous question, plaintiff states in brief that she had "prior experience with automobiles," gained when she was previously employed at a gas station, an automobile dealership, and an automobile plant.  Plaintiff's brief, at 4-5.  The job application plaintiff submitted to defendant, however, states that she was employed as a "cashier" and "customer service" worker at the gas station, and as a receptionist at the automobile dealership.  It is not clear what duties plaintiff performed at the automobile plant.  Defendant's evidentiary submissions, Exhibit A (Neal deposition), at Exhibit 7 (Neal application for employment) (Bates Stamp No. is illegible).

To the extent that plaintiff's brief and May 6, 2003 affidavit contradict her March 12, 2003 deposition testimony, the court credits what plaintiff said during deposition.  In this circuit, "a party cannot give 'clear answers to unambiguous questions' in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction."  *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987) (quoting *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)).  "When this occurs, the court may disregard the affidavit as a sham."  *Rollins*, 833 F.2d at 1530 (citing *Van T. Junkins*, 736 F.2d at 658-59).

[11] Defendant's evidentiary submissions, Exhibit A (Neal deposition), at 37.  With regard to her job title, plaintiff's brief again contradicts her deposition testimony.  At deposition, plaintiff was asked, "[d]uring your time in the automotive department, you were a service writer/greeter, is that correct?"  She answered, "Yes."  *Id.*  Plaintiff's brief asserts, however, that "[i]t is disputed . . . that plaintiff transferred into the TLE department as a 'Service Writer/Greeter.' . . . The classification of 'TLE Sales Floor Associate' actually appears as plaintiff's job title in her personnel file."  Plaintiff's brief, at 5.  Additionally, plaintiff's ninety-day performance appraisal identifies her as job title as "greeter."  Defendant's evidentiary submissions, Exhibit A (Neal deposition), at Bates Stamp No. BN00314.

Plaintiff's brief later takes yet another tack on the issue, claiming that her job title was actually "Courtesy Technician."  She then adds that there is no "Courtesy Technician" listed on defendant's pay scale.  In other words, "[t]he position does not exist."  Plaintiff's brief, at 20.  Plaintiff postulates that, since Charles Long, TLE District Manager, testified at deposition that there is only one kind of technician employed in the TLE department, identified by the title "Shop Technicians," that plaintiff, as a "Courtesy Technician," must actually be a TLE technician.  Defendant's evidentiary submissions, Exhibit B (Long deposition), at 166; plaintiff's brief, at 20.  The court does not find such an argument based on word games to be persuasive or dispositive.

week later, plaintiff's pay was raised to $7.80 an hour.[12]

As a service writer/greeter, plaintiff's job duties primarily involved greeting customers and recording customer orders.  Additionally, plaintiff occasionally performed cleaning tasks in the department, vacuumed customer vehicles, and shelved merchandise.[13]  Plaintiff states that she sometimes "helped out" in the garage area by unloading trucks, moving customer vehicles, and pouring new oil into customer vehicles after the used oil had been drained by a TLE technician.[14] Plaintiff could not recall how often she helped unload trucks, but explains that she eventually filled vehicles with new oil "every day."[15]  Plaintiff adds that she occasionally helped customers with battery installations, and changed four or five sets of tires during her roughly, four-month tenure in the TLE department.[16]

In total, plaintiff worked in the TLE department from July 22 until some undisclosed date in November of 2001.  She took maternity leave during the months of December 2001 and January 2002.  She worked a few days in February of 2002, and then resigned her employment.[17]

## B.    Job Positions, Duties, and Pay of Plaintiff's Comparators

The gravamen of plaintiff's suit is that, as a "service writer/greeter," she was paid less than several male "TLE technicians" in her department.[18]  Plaintiff claims that, about a month after her

---

[12] Defendant's evidentiary submissions, Exhibit A (Neal deposition), at 21-22.  Plaintiff was given a pay raise as part of a performance appraisal conducted after she had been employed with defendant for ninety days.  Plaintiff's job position on the performance appraisal form was listed as "greeter."  *Id.* at Bates Stamp No. BN00314.

[13] *Id.* at 37-38.

[14] *Id.* at 38.

[15] *Id.* at 39-40.

[16] *Id.*

[17] Defendant's evidentiary submissions, Exhibit C (O'Neal declaration) ¶ 2.

[18] Despite the fact that her job title was not "TLE technician," plaintiff claims that several male TLE technicians performed "identical job duties to [her]."  In her brief opposing summary judgment, plaintiff theorizes that defendant discriminatorily assigned females to "Service Writer/Greeter" positions and males to "TLE technician" positions, and then used the difference in job titles to justify paying male employees a higher hourly wage than similarly-situated female

transfer, she began to perform many of the functions of a TLE technician and, thus, should have been paid a higher wage.[19]

A TLE technician is an individual whose primary job duties include the performance of various routine maintenance functions on automobiles, such as oil, tire, and battery changes. While prior experience is not necessary for hire, all TLE technicians are expected to complete training and testing in order to obtain a company-issued certification to perform various vehicle maintenance duties.[20]

Plaintiff claims that she engaged in some on-the-job training, watched some training videos, and worked her way through an unspecified number of computer-based-learning modules "to learn *aspects* of the Technician job."[21] While plaintiff does not explicitly claim that she completed all of the requirements necessary to obtain certification as a TLE technician, she states that "I remember seeing a certificate that I was certified by Wal-Mart in TLE duties. However, my manager would not give me the certificate or post it on the wall with the other employees who had received certificates."[22] (The TLE department manager, Willy O'Neal, avers that plaintiff neither requested nor completed the course of training required to obtain TLE certification.[23])

During plaintiff's tenure in the TLE department, the starting wage for TLE technicians with

---

employees. Defendant's brief, at 6.

    Undercutting that theory is the fact that management encouraged plaintiff to transfer to a TLE technician job in order to earn a higher salary, but plaintiff elected not to do so. Defendant's evidentiary submissions, Exhibit A (Neal deposition), at 66 ("The department manager said that you need to go out to the technician side so you can make more money."). Additionally, plaintiff produces no evidence that any female employee (or job applicant) applied for a TLE technician job but was rejected because of her gender.

[19] Defendant's evidentiary submissions, Exhibit A (Neal deposition), at 49; Complaint (doc. no. 1) ¶¶ 14-17.

[20] *Id.*, Exhibit C (O'Neal declaration) ¶ 4.

[21] Plaintiff's evidentiary submissions (Neal affidavit) ¶ 8 (emphasis supplied).

[22] *Id.*

[23] Defendant's evidentiary submissions, Exhibit C (O'Neal declaration) ¶ 13.

no prior automotive experience was $7.50 an hour. New hires with prior automotive experience, or some other outstanding qualification, were eligible to be paid a starting wage of $8.00 an hour. Twenty-three male TLE technicians worked in the department at some point during plaintiff's tenure. Of that number, thirteen had a starting wage of $7.50 an hour, while only ten were hired at the rate of $8.00 an hour.[24] Thus, plaintiff's $7.80 hourly rate was greater than the starting wage of most of the TLE technicians.

## II. DISCUSSION

To avoid summary judgment, plaintiff bears the initial burden of demonstrating that her former employer paid a higher wage to a male employee "for equal work on jobs[,] the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." 29 U.S.C. § 206(d); *see also Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S. Ct. 2223, 2228, 41 L. Ed. 2d 1 (1974); *Arrington v. Cobb County,* 139 F.3d 865, 876 (11th Cir. 1998) (citing *Waters v. Turner, Wood & Smith Insurance Agency, Inc.,* 874 F.2d 797, 799 (11th Cir. 1989)).

> The plaintiff need not prove that the job held by her male comparator is identical to hers; she must demonstrate only that the skill, effort, and responsibility required in the performance of the job are "substantially equal." 29 U.S.C. § 206(d)(1); *Corning Glass Works,* 417 U.S. at 204, 94 S. Ct. at 2232-33; *Brock v. Southwestern College,* 765 F.2d 1026, 1032 (11th Cir. 1985). Although job titles are entitled to some weight in this evaluation, "the controlling factor under the Equal Pay Act is job content" — the actual duties that the respective employees are called upon to perform. *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1049 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973).

*Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1533 (11th Cir. 1992); *see also Alford*

---

[24] TLE Department Manager Willie O'Neal explained that he hired two TLE technicians at a salary of $8.00 an hour because they each had approximately *thirty years' experience* working at a company called ABC Rail. The other eight TLE technicians that O'Neal hired at an elevated hourly wage all had substantial automotive experience. Defendant's evidentiary submissions, Exhibit C (O'Neal declaration) ¶¶ 8-11.

*v. Cosmyl, Inc.,* 209 F. Supp. 2d 1361, 1371 (M.D. Ga. 2002) (holding that "[t]he issue at the summary judgment stage is whether a reasonable jury could conclude that [plaintiff's] job was substantially equal to the job of fellow male employees, and yet she was [paid] less") (citing *Waters,* 874 F.2d at 799). Thus, the core requirement for establishing a cognizable Equal Pay Act claim is that plaintiff meet "the fairly strict standard of proving that she performed substantially similar work for less pay" than a male counterpart. *Miranda,* 975 F.2d at 1526.[25]

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to prove by a preponderance of the evidence that the pay differential is justified by one of the four exceptions, or affirmative defenses, listed in the Equal Pay Act. *See Corning Glass Works,* 417 U.S. at 196, 94 S. Ct. at 2229; *Irby v. Bittick,* 44 F.3d 949, 954 (11th Cir. 1995); *Meeks v. Computer Associates International,* 15 F.3d 1013, 1018 (11th Cir. 1994). Those exceptions are: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any . . . factor other than sex." 29 U.S.C. § 206(d)(1). The employer's burden of proof for those affirmative defenses is a "heavy one," because it "must show that the factor of sex provided no basis for the wage differential." *Irby,* 44 F.3d at 954 (quoting *Mulhall v. Advance Security, Inc.,* 19 F.3d 586, 590 (11th Cir. 1994) (internal quotation marks omitted)). If

---

[25] Plaintiff could have pursued her claim under the provisions of Title VII, but chose not to do so. "Gender-based discrimination in rates of pay to employees . . . is prohibited by both the Equal Pay Act . . . as well as by Title VII . . . ." *Hammock v. Nexcel Synthetics, Inc.,* 201 F. Supp. 2d 1180, 1187 (N.D. Ala. 2002) (quoting *Miranda v. B & B Cash Grocery Store,* 975 F.2d 1518, 1526 (11th Cir. 1992)). The quantum of proof that a plaintiff must provide differs somewhat between the two forms of action:

> A plaintiff suing under the [Equal Pay Act] must meet the fairly strict standard of proving that she performed substantially similar work for less pay. The burden then falls to the employer to establish one of the four affirmative defense provided in the statute. Under the disparate treatment approach of Title VII, however, there is a relaxed standard of similarity between male and female-occupied jobs, but a plaintiff has the burden of proving an intent to discriminate on the basis of sex . . . .

*Hammock,* 201 F. Supp. 2d at 1187 (quoting *Miranda,* 975 F.2d at 1526).

the employer carries that burden, "the plaintiff must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based discrimination. . . . If plaintiff is able to create the inference of pretext, there is an issue which should be reserved for trial." *Irby*, 44 F.3d at 954 (citations omitted).

Here, summary judgment is due to be granted because plaintiff cannot establish a prima facie case. Plaintiff's deposition testimony sets forth facts which preclude any reasonable jury from concluding that plaintiff's job duties were substantially similar to those of *any* male TLE technician.

It is abundantly clear that plaintiff was *not* assigned to the TLE department to perform TLE technician duties, and that her job duties were substantively different from those performed by TLE technicians. At deposition, plaintiff testified as follows:

Q:   During your time in the automotive department, you were a service writer/greeter[,] is that correct?

A:   Yes.

Q:   And in that job you would greet the person when they came in and take their order as to what they wanted done to their car?

A:   Yes.

Q:   You would clean up around the shop occasionally[,] correct?

A:   Yes.

Q:   You may from time to time help vacuum out a car[,] correct?

A:   Yes.

Q:   And if they needed you to go inside and help zone or put up freight, you did that from time to time[,] correct?

A:   Yes.[26]

---

[26] Defendant's evidentiary submissions, Exhibit A (Neal deposition), at 37-38.

. . . .

Q:      Did the TLE tech job, was that a harder job than the service writer/greeter job?

. . . .

A:      No.

Q:      It's not?  Why do you say that?

A:      Because when you write up customers and the technicians screw up their order, put the wrong filter and blow up the motor, I am the one that gets cussed out.  I am the one that gets blamed, and, you know, that takes a lot more patience because you're dealing with actual humans who have attitudes because cars don't have attitudes.[27]

. . . .

Q:      When you talked to Willy [O'Neal] about moving to the automotive department, did y'all talk about what position you would have when you moved over there?

A:      Yeah.  He told me that I would be the person who helps the customers when they first come in, help write up what they want, and you'll help zone and stock and help the customers on the inside.

Q:      And that's what the service writer greeter does[,] correct?

A:      Yes.[28]

. . . .

Q:      So do you think that the TLE tech job was more physically demanding than the service writer greeter job?

A:      Yes.[29]

. . . .

Q:      You were never classified as a TLE tech, were you?

---

[27] *Id.* at 43.

[28] *Id.* at 107-08.

[29] *Id.* at 47.

A:     No.[30]

Further, while plaintiff claims that she eventually began to perform TLE technician duties on a full-time basis,[31] her deposition testimony eviscerates any reasonable inference that she performed work of the same scope, or at the same level, as co-workers who were designated TLE technicians. At most, plaintiff's testimony only allows a reasonable inference that she occasionally "helped out" by performing routine tasks in the garage area.

Q:     Were there any other job duties other than those that you did as part of that job?

A:     Yes. I helped out in the shop. I unloaded tire trucks, battery trucks. I helped in [the] upper bay putting oil back in the vehicle. I helped change tires.

Q:     When you say "helped in [the] upper bay," what do you mean?

A:     If there was [sic] only two technicians out in the shop, one was doing tires and the other one was doing oil changes, I'd pull the next car forward. I would help do upper bay while he went down to the lower bay and changed the filters, and I'd put the oil back in the car when he was finally done with the filters.

Q:     Did you do anything else other than that and the things I mentioned earlier?

A:     I actually took off tires and helped rotate tires, put new tires on. I went out and helped customers with the battery installations.

Q:     And you had no prior automotive experience before this?

A:     No.

Q:     How often did you help unload trucks?

A:     I don't remember. I mean, I would help whenever I could whenever help was needed.

Q:     How about helping out in the upper bay with the oil changes, how many times did you do that?

---

[30] *Id.* at 47-48.

[31] *Id.* at 48.

A:   After a point it was every day.[32]

. . . .

Q:   Do you remember when that was?

A:   No.

Q:   How many times did you change tires?

A:   I probably did four or five sets of tires actually taking them off and putting them back on the vehicle.

Q:   And when you said you rotated tires, would this be the same four or five sets you're talking about?

A:   Yes.[33]

. . . .

Q:   And you never did anything in the lower bay; correct?

A:   Well, I mean, I would go down there and watch so I could learn more. And I think I did one or two cars as far as changing the filters myself. And I asked Little Randy how to — how would you get to this certain filter, you know, wouldn't get you burned, and he showed me how to get to them.

Q:   He showed you how to get to them, but my question is: Did you ever do anything in the lower bay?

A:   Not really.[34]

. . . .

Q:   You've told me that [the service writer/greeters] would help [the TLE technicians], but the TLE techs were changing tires and changing oil full-time, correct?

A:   Yes.[35]

---

[32] Defendant's evidentiary submissions, Exhibit A (Neal deposition), at 38-39.

[33] *Id.* at 40.

[34] *Id.* at 41.

[35] *Id.* at 46.

-12-

. . . .

Q:     Did somebody tell you to start wearing a different uniform?

A:     No.  My department manager told me that if I didn't want to get my shirt
       dirty and I wanted to work out in the shop, that I'd have to wear blue.[36]

The foregoing clearly demonstrates that plaintiff did *not* perform duties substantially similar to those performed by a TLE technician.  She performed only a *de minimis* amount of work changing and rotating tires, or in the lower bay draining oil and changing filters, and the little work that she did perform there was completed under the supervision of a TLE technician.

Notably, plaintiff has produced no evidence that she was *compelled* to perform any tasks outside the scope of her job as a service writer/greeter.[37]  Plaintiff has, at most, demonstrated that she performed *some* of the duties of a TLE technician during portions of her four-month tenure in the TLE department.  That falls far short of demonstrating that plaintiff's job duties required equal skill, effort, responsibility, and were performed under similar working conditions as those of a TLE technician.

Finally, even if plaintiff established that she performed the duties of a TLE technician, she has produced no credible evidence that she would be entitled to a higher salary than that which she received.  It is undisputed that, as a TLE technician with no prior automotive experience, plaintiff

---

[36] *Id.* at 50-51.

[37] TLE Department Manager Willy O'Neal states:

> To my knowledge, Leslie Neal never performed the job duties of a TLE Technician.  As a Service Writer/Greeter, she greeted customers, drove their cars into the shop, cleaned windshields, oiled car doors, completed work orders and occasionally filled oil.  She did not work in the lower bay, where oil is changed, nor did she work on tires.  Her work as a Service Writer/Greeter involved entirely different duties and physical efforts than the position of TLE Technician.  I never classified Leslie as a TLE Technician or asked her to perform the job of a TLE Technician.  Associates are not allowed to change jobs without management approval.  Also, Leslie did not ask to become a TLE Technician or to do the training and CBLs necessary to become a certified TLE Technician.

Defendant's evidentiary submissions, Exhibit A (O'Neal declaration) ¶ 13.

only was entitled to a starting wage of $7.50 an hour, which is what she received as a service writer/greeter for about a week, after which her wage was increased to $7.80 an hour.

### III. CONCLUSION

In accordance with the foregoing, defendant's motion for summary judgment is due to be granted. Defendant's motion to strike will be denied as moot. An appropriate order will be entered contemporaneously herewith.

DONE this _____**25**th_____ day of June, 2003.

_____
United States District Judge

-14-